**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

```
                                  :
DAVID L. GREENE,                  :
                                  :    CIVIL ACTION NO. 07-2903 (MLC)
        Plaintiff,                :
                                  :    **MEMORANDUM OPINION**
        v.                        :
                                  :
METROPOLITAN INSURANCE AND        :
ANNUITY COMPANY,                  :
                                  :
        Defendant.                :
_____    :
```

**COOPER, District Judge**

Plaintiff, David L. Greene, commenced this action against
defendant, Metropolitan Insurance and Annuity Company ("MIAC"),
in state court, <u>inter alia</u>, (1) alleging breach of contract for
defendant's cancellation of plaintiff's life insurance policy
(the "Policy"), and (2) seeking a judgment declaring that the
Policy remain in full force and effect until the date specified
in the contract (the "Final Date") or plaintiff's death,
whichever occurs first. (Dkt. entry no. 1, Compl.)  Defendant
removed the case under 28 U.S.C. § 1332(a).  (Dkt. entry 1, Rmv.
Not.)  Plaintiff now moves, in effect, to strike the defense that
this litigation is barred by a nationwide class action settlement
("Settlement Order Defense"), <u>In re Metropolitan Life Insurance</u>
<u>Co. Sales Practices Litigation</u>, No. 96-179, MDL 1091 (W.D. Pa.
1999) (the "MDL Litigation").  (Dkt. entry no. 26).  Defendant
cross-moves for summary judgment, contending this action raises
claims that were released pursuant to the Final Order Approving

Class Action Settlement ("Settlement Order") in the MDL
Litigation.  (Dkt. entry no. 29.)  The Court will decide the
motion and cross motion without oral argument and on the papers
pursuant to Federal Rule of Civil Procedure ("Rule") 78(b).  The
Court, for the reasons stated herein, will (1) deny the motion,
and (2) grant the cross motion.

**BACKGROUND**

**I.   The Policy**

Plaintiff and his spouse, Ruth Greene, purchased the Policy
- titled "Flexible-Premium Life Insurance Policy" and numbered
840 286 099 UL – from defendant in January, 1984.  (Compl. at 1;
see id., Ex. A, Policy.)  Under the terms, Ruth Greene, the owner
and beneficiary, was set to receive a lump sum of $250,000 upon
the death of plaintiff, the insured party, if such event occurred
before plaintiff reached the age of 95 (the Final Date).
(Compl., Ex. A, Policy at 2-3; dkt. entry no. 29, Def. Br. at 6.)

The Policy provided that plaintiff would make semi-annual
payments of $2,758.00.  (Compl., Ex. A, Policy at 3.)  It
expressly stated, however, that "[p]remiums must be sufficient to
keep the policy in force."  (Id. at 1.)  It further stated that

> THIS POLICY PROVIDES LIFE INSURANCE COVERAGE UNTIL THE FINAL
> DATE IF SUFFICIENT PREMIUMS ARE PAID.  THE PLANNED PREMIUM .
> . . MAY NEED TO BE INCREASED TO KEEP THIS POLICY AND
> COVERAGE IN FORCE.

(Id. at 3; see also id. at 3A ("An adjustment in the premium for
life insurance will be determined on a prospective basis, and

2

will not recoup past losses.").)   Plaintiff made the semi-annual payments according to the terms of the Policy for approximately 23 years.  (Dkt. entry no. 26, Pl. Br. at 2.)

In January 2007, however, when attempting to change the beneficiary of the Policy upon Ruth Greene's death, plaintiff, at the age of 83, was notified that the Policy would be prematurely terminated.  (Compl. at 2; Pl. Br. at 2; dkt. entry no. 30, Pl. Opp'n Br. at 14.)  Plaintiff was given certain options regarding the cancellation, including continuing coverage under the Policy with an earlier Final Date, or a "Special Option" in which he would receive the face value of the net premiums paid – approximately $126,000.  (Def. Br. at 4; Pl. Opp'n Br. at 14; see Compl., Ex. C.)

Plaintiff subsequently filed the complaint in state court to, inter alia, (1) enjoin defendants from cancelling the Policy, and (2) declare that (a) the proposed cancellation was a breach of contract, and (b) the Policy shall remain in full force and effect until plaintiff's death or plaintiff reaches the age of 95, whichever occurs first, in accordance with the terms and provisions of the Policy.  (Compl. at 2.)

## II.  The MDL Litigation

The Judicial Panel on Multidistrict Litigation, on February 20, 1996, commenced the MDL Litigation by consolidating several complaints filed against the Metropolitan Insurance Company and its entities regarding the sale, servicing, and administration of

certain life insurance policies and annuities purchased from 1982 through 1997.  (Def. Br. at 2; dkt. entry no. 29, Friedlander Aff., Ex. B, Notice of Class Action, Proposed Settlement, and Fairness Hearing ("Notice") at 8.)[1]  The MDL Litigation plaintiffs alleged violations of federal securities laws and various state common and statutory laws regarding, <u>inter alia</u>, misrepresentation of the sale of the policies and annuities.[2]

In an Order dated August 18, 1999 (the "Proposed Settlement Order"), the MDL Court (1) preliminarily approved a proposed settlement, (2) certified a class, subject to certain exceptions, for purposes of settlement, and (3) approved a class notice plan presented by the parties.  See <u>In re Metro. Life Ins. Co. Sales Practices Litig.</u>, No. 96-179, 1999 U.S. Dist. LEXIS 22688, at

---

[1]  The MDL Litigation encompassed allegations against the Metropolitan Insurance Company, the MIAC, and the Metropolitan Tower Life Insurance Company.  The term "MetLife" as used herein includes all three companies.

[2]  The amended complaint alleges, <u>inter alia</u>, that MetLife (1) engaged in improper replacement, churning, or rollover of policies and annuities, (2) misrepresented that a single payment or a limited number of premium payments would cover all out-of-pocket premiums due on certain policies (<u>i.e.</u>, the vanishing premium concept), while it knew or should have known that interest rates would fall and the policies would not be able to sustain the projected dividends or interest, (3) misrepresented nonguaranteed elements of the policies, (4) misrepresented or failed to adequately disclose the nature, quality, suitability, or benefits of policies sold, (5) improperly increased the cost of insurance in connection with a change in the tax laws, and (6) improperly marketed and sold deferred annuities for funding qualified plans on the basis of a tax-deferral advantage that did not exist.  (Friedlander Aff., Ex. B, Notice at 8-9.)

*14-*15 (W.D. Pa. Dec. 28, 1999).  The proposed settlement class consisted of:

> all persons and/or entities (such as companies or trusts) who have or had an ownership interest in any permanent life insurance policy or any deferred annuity contract or certificate issued at any time from January 1, 1982 through December 31, 1997 (the "Class Period") by MetLife in the United States pursuant to an individual sale.

(Friedlander Aff., Ex. B, Notice at 6.)  The Proposed Settlement Order required all potential class members who did not wish to participate in the proposed settlement to submit written requests for exclusion.[3]  (Dkt. entry no. 32, Lake Aff. at 2; Friedlander Aff. at 2.)

Rust Consulting, Inc. ("Rust Consulting"), through the MDL Court's directive, was appointed by MetLife to mail Class Notice Packages to each potential class member - all persons who purchased MetLife life insurance policies and annuities during the specified time frame.  See In re Metro. Life Ins. Co. Sales Practices Litig., 1999 U.S. Dist. LEXIS 22688, at *44.  Also charged with receiving exclusion requests from class members, Rust Consulting mailed 6,278,709 Class Notice Packages, by first class mail, to potential class members at their last known

---

[3]  The Proposed Settlement Order expressly stated that all class members who wished to exclude themselves from the settlement class must "'submit an appropriate, timely written request for exclusion, so as to be received no later than 30 days before the date of the Fairness Hearing, to the Clerk of Court.'" (Lake Aff. at 2 (citing Proposed Settlement Order); Friedlander Aff. at 2 (same).)

addresses.  Id.  (Friedlander Aff. at 1; Def. Br. at 3.)  The
notice specifically informed the recipients that "[i]f [a
potential class member did] not want to participate in the
settlement for any particular Policy or Annuity, [he or she] must
ask for that Policy or Annuity to be excluded from the Class to
avoid being bound by the settlement and any Judgment in this
Action."  (Friedlander Aff., Ex. B, Notice at 19.)

The Class Notice Package also contained information regarding
the upcoming December 2, 1999 Fairness Hearing, in which the MDL
Court would consider whether to (1) grant final certification to
the class for settlement purposes, and (2) approve the proposed
settlement as fair, reasonable, and adequate.  (Id. at 20-22.)
Notice of the Fairness Hearing was also published on October 1,
1999, in the Newark Star Ledger, the New York Times, the Wall
Street Journal, and USA Today.  (Friedlander Aff. at 2.)

At the hearing, the MDL Court found that the Class Notice
Package complied with the requirements of Rule 23, and approved
the settlement as fair, reasonable, and adequate.  (Def. Br. at
3.)  The Court thus issued the Settlement Order, and dismissed
all settlement class members' claims "on the merits and with
prejudice."  In re Metro. Life Ins. Co. Sales Practices Litig.,
1999 U.S. Dist. LEXIS 22688, at *122.

As to the notice given to the class, the MDL Court stated:

In [the Proposed Settlement] Order, the Court approved
the Class Notice Package, the Publication Notice and the

6

> Notice methodology set forth in the Settlement
> Agreement.  The Court found that the Class Notice
> Package, together with the Publication Notice, was the
> "best practicable notice" and was "reasonably
> calculated, under the circumstances, to apprize class
> members of the pendency of the Action and of their right
> to object to or exclude themselves from settlement," and
> met all the applicable requirements of law, including
> but not limited to [Rule] 23(c) and the Due Process
> Clause. . . .[T]he Court affirms these conclusions.

Id. at *43-*44.

The Settlement Order decreed that "[t]he terms of the

Settlement Agreement and of this Order and the accompanying Final

Judgment shall be forever binding on Plaintiffs and all other

class members."  Id. at *102-*03.  It contained a release and

waiver generally barring class members from asserting any other

lawsuit or proceeding in the future with any of the claims that

were or could have been asserted in the action (the "Release").

See id. at *33, *103-*16.  The Release provided:

> 1. Plaintiffs and all Class Members hereby expressly agree
> that they shall release and discharge the Releasees from any
> and all claims or causes of action -- known or unknown --
> that were or could have been asserted in this action with
> respect to Policies . . . .  Plaintiffs and all Class Members
> agree that they release, acquit and forever discharge all
> Releasees from and shall not now or hereafter institute,
> participate in, maintain, maintain a right to or assert
> against the Releasees, either directly or indirectly, on
> their own behalf, derivatively, or on behalf of the Class or
> of any other person or entity, any and all causes of action,
> claims, damages, awards, equitable, legal and administrative
> relief, interest, demands or rights, including, without
> limitation, claims for rescission, restitution or all
> damages of any kind . . . that have been, could have been,
> may be or could be alleged or asserted now or in the future
> by Plaintiffs or any Class Member against the Releasees . .
> . on the basis of, connected with, arising out of, or
> related to, in whole or in part, the Policies . . . and the
> Released Transactions, including, without limitation:

7

. . .

b. any or all of the acts, omissions, nondisclosures, facts, matters, transactions, occurrences, or oral or written statements or representations allegedly made in connection with or directly or indirectly relating to the Released Transactions (to the extent applicable to Policies and/or Annuities), including . . .

2) the ability to keep or not to keep a Policy or Policies in-force based on a fixed number and/or amount of premium payments (less than the number and/or amount of payments required by the terms of the Policies), and/or the amount that would be realized or paid under the Policies based on a fixed number and/or amount of cash payments (less than the number and/or amount of payments required by the terms of the Policies), whether in the form of (i) cash value and/or (ii) death, retirement or periodic payment benefits.

Id. at *103-*106.  (See also Friedlander Aff., Ex. B, Notice at 28.)  The Release language was also set forth in the stipulation of settlement and Class Notice Package.  See In re Metro. Life Ins. Co. Sales Practices Litig., 1999 U.S. Dist. LEXIS 22688, at *33.  Class members were further informed that claims released by non-opt out class members included those that, "with respect to Policies," relate to "policy or premium charges and monthly deductions."  (Friedlander Aff., Ex. B, Notice at 29.)

## III. Plaintiff's Failure to Opt Out of the Class

According to Rust Consulting's database, a Class Notice Package was sent to Ruth Greene at 233 South Lincoln Avenue, Oakhurst, New Jersey 07555, postage prepaid, on or about September 29, 1999.  (Lake Aff. at 2; Friedlander Aff. at 1; Def. Br. at 3.) Plaintiff and Ruth Greene resided at the Oakhurst address "[a]t all times" after first acquiring the Policy in 1984.  (Dkt. entry

8

no. 26, Greene Aff. at 3.)  According to Rust Consulting, a
search performed in its database for policy number 840 286 099 UL
provided "all activity related to the settlement," including,
inter alia, details regarding the recipients' addresses and the
mailings that were sent and received.  (Lake Aff. at 1-2.)
Although the database showed that the Greenes were mailed a Class
Notice Package, the database did not show that Rust Consulting
ever received notice that the package was undeliverable.  (Id.;
Friedlander Aff. at 2.)  Nor did the database show that an
exclusion request was ever received from plaintiff, Ruth Greene,
or any representative of either.  (Lake Aff. at 2-3; Friedlander
Aff. at 2.)

     Accordingly, pursuant to the terms of the settlement, Ruth
Greene, the owner of the Policy, received General Relief after
the Settlement Order was issued.  (Lake Aff. at 3; Friedlander
Aff. at 2.)  The Rust Consulting database shows that a General
Relief award letter was sent to the Greenes at the Oakhurst
address, notifying them of the settlement, on May 3, 2000.  (Def.
Br. at 3; Lake Aff. at 3; Friedlander Aff. at 2.)  Rust
Consulting does not have any documented notice from the Postal
Service that this letter was undeliverable.  (Def. Br. at 3; Lake
Aff. at 3; Friedlander Aff. at 3.)

     Plaintiff now moves to strike the Settlement Order Defense,
contending neither he nor his wife received notice of the

existence or resolution of the MDL Litigation, and were not given the opportunity to opt out of such a suit.  (Pl. Br. at 5.) Plaintiff argues defendant has not produced any competent evidence to prove plaintiff or his wife received notice, such as proof of mailing or any other confirmations.  (Id. at 3.) Defendant opposes plaintiff's motion, and cross-moves for summary judgment, contending plaintiff and his wife were members of the MDL Litigation class, and plaintiff's claims are now barred pursuant to the Settlement Order.  (Def. Br. at 4-10.)  Defendant further argues that, regardless of the MDL Litigation, the language of the Policy supports a grant of summary judgment in its favor.  (Id. at 10-12.)

**DISCUSSION**

**I.   Summary Judgment Standard**

Rule 56(c) provides that summary judgment is proper if the pleadings, the discovery and disclosure materials, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c).  The summary judgment movant bears the initial burden of showing that there is no genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the movant has met this prima facie burden, the non-movant must set out specific facts showing that there is a genuine issue for trial.  Fed.R.Civ.P. 56(e)(2).  A non-movant must present actual evidence that raises a genuine issue of

10

material fact and may not rely on mere allegations.  Anderson v. Liberty Lobby, 477 U.S. 242, 249 (1986).

The Court must view the evidence in the light most favorable to the non-movant when deciding a summary judgment motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  At the summary judgment stage, the Court's role is "not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Anderson, 477 U.S. at 249.  Under this standard, the "mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient [to defeat a Rule 56(c) motion]; there must be evidence on which the jury could reasonably find for the [non-movant]."  Id. at 252.  "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Id. at 247-48 (emphasis in original).  A fact is material only if it might affect the action's outcome under governing law.  Id. at 248.  "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-50 (internal citations omitted).

11

## II.  The Cross Motion Should Be Granted

Plaintiff contends that his claims are not barred by the MDL Litigation settlement because neither he nor his wife received notice of the MDL Litigation and thus are not class members and not bound by the settlement.  (Pl. Opp'n Br. at 4-9.)  He further asserts that, even if he is found to have been a class member, his claims are not barred because defendant's breach of the Policy contract is not an issue that was resolved in the MDL Litigation.  (<u>Id.</u> at 10-11.)

### A.  The MDL Litigation Settlement Order is Binding Upon Plaintiff

Rule 23(c)(A)(2) states that "[f]or any class certified under Rule 23(b), the court must direct to class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed.R.Civ.P. 23(c)(2)(A).  The Rule further mandates that the notice shall advise class members that "the court will exclude from the class any member who requests exclusion," and that "whether or not favorable," the judgment must include those "who have not requested exclusion, and whom the court finds to be class members."  Fed.R.Civ.P. 23(c)(2)(B)(v), 23(c)(3)(B); <u>see</u> <u>Eisen v. Carlisle & Jacquelin</u>, 417 U.S. 156, 173 (1974) ("[T]he import of this language is unmistakable.  Individual notice must be sent to all class members whose names and addresses may be

12

ascertained through reasonable effort."); <u>see also</u> <u>Mullane v.</u>
<u>Cent. Hanover Bank & Trust Co.</u>, 339 U.S. 306, 314 (1950)
(establishing framework for evaluating adequacy of notice for due
process purposes, holding that notice must be "reasonably
calculated, under all circumstances, to apprise interested
parties of the pendency of the action and afford them an
opportunity to present their objections").

  "[A]ctual notice," however, "is not a prerequisite to
constitutionality." <u>In re Diet Drugs Prods. Liab. Litig.</u>, 89
Fed.Appx. 314, 317 (3d Cir. 2004).  The appropriate inquiry
involves "the 'reasonableness and hence the constitutional
validity of any chosen method.'" <u>Id.</u> at 316 (quoting <u>Dusenbery v.</u>
<u>United States</u>, 534 U.S. 161, 171 (2002)).

  If plaintiff, who purchased the Policy during the relevant
Class Period, is found to have received notice here, then
plaintiff will be deemed to have been a class member, and his
claims, to the extent they arise under the Release, will be
barred by the Settlement Order.  A class member is bound by a
judgment in an action brought by an adequate class
representative. <u>Hansberry v. Lee</u>, 311 U.S. 32, 42-43 (1940);
<u>Equal Employment Opportunity Comm'n v. U.S. Steel Corp.</u>, 921 F.2d
489, 494 (3d Cir. 1990).  Moreover, the doctrine of res judicata
precludes parties from re-litigating claims that have been fully
and fairly decided when (1) the issue adjudicated in the prior

13

proceeding is identical to the current issue, (2) there is a
final judgment on the merits, and (3) the party against whom the
defense is asserted was a party or in privity with a party in the
prior adjudication.  See Blonder-Tongue Labs. v. Univ. of Ill.
Found., 402 U.S. 313, 323-24 (1971).  Res judicata applies to
class actions in that "a judgment rendered in a class suit is res
judicata as to members of the class who are not formal parties to
the suit."  Hansberry, 311 U.S. at 42; see also Perlstein v.
Transamerica Occidental Life Ins. Co., No. 07-5782, 2008 U.S.
Dist. LEXIS 55550, at *10-*11 (D.N.J. July 16, 2008).  When a
class action settlement is approved under Rule 23, and the
requirements of due process are found to have been satisfied, res
judicata attaches and all individual class members who have not
opted-out are bound by the terms of the class action settlement.
In re Prudential Ins. Co. of Am. Sales Practice Litig., 95-4704,
2008 U.S. Dist. LEXIS 2658, at *6 (D.N.J. Jan. 11, 2008).

     Plaintiff contends that neither he nor his wife were class
members to the MDL Litigation, and thus cannot be bound by the
Settlement Order, because neither were provided with notice of
the litigation pursuant to Rule 23.  (Pl. Opp'n Br. at 4-9.)  He
asserts that, until commencing the current action, he was not
aware that (1) any issues regarding the Policy were litigated in
any fashion, (2) the MDL Litigation had been instituted or
resolved, or (3) any dispositive court order related to the

14

Policy had been entered.  (Pl. Br. at 2-3; Pl. Opp'n Br. at 5.)
Plaintiff further argues that the evidence presented by defendants
to show proof of notice is "woefully inadequate," "hearsay," and
"devoid of competent proof."  (Pl. Opp'n Br. at 5-8.)

The class for the MDL Litigation was comprised of the
purchasers of permanent life insurance policies or annuities
contracts, issued by MetLife pursuant to an individual sale,
between January 1, 1982 and December 31, 1997.  (Friedlander Aff.,
Ex. B, Notice at 5.)  Plaintiff's action concerns MetLife Policy
No. 840 286 099 UL.  The Policy was issued in 1984, during the
relevant period of time for class member purposes.  (Greene Aff.
at 2.)  An affidavit submitted by a Senior Project Administrator
of Rust Consulting, with personal knowledge of the Rust
Consulting's records, has confirmed that (1) a Class Notice
Package was sent to plaintiff and his wife with respect to Policy
No. 840 286 099 UL, (2) Rust Consulting did not receive notice
from the Postal Service that the Class Notice Package was
undeliverable, (3) Rust Consulting did not receive an exclusion
request from plaintiff, his wife, or a representative of either,
(4) Rust Consulting mailed a General Relief award letter with
respect to the above identified policy to plaintiff's address,
and (5) Rust Consulting did not receive notice that the award
letter was undeliverable. (Lake Aff. at 1-3; see also Friedlander
Aff. at 1-3.)

15

To establish notice, defendant is not required to make a further showing.  Such a showing

> would jeopardize the utility of class action settlements which are made possible because those class members who do not opt out are bound by its terms. . . . Defendants would be strongly discouraged from entering into such settlements if, despite a final determination that notice procedures were constitutionally sufficient, class members could be excused from the judgment. . . . Moreover, if [plaintiff] were to prevail, other class members who failed to opt out by the relevant deadline would be encouraged to revive their claim.

In re Diet Drugs Prods. Liab. Litig., 89 Fed.Appx. at 317; see also In re Prudential Ins. Co. of Am. Sales Practices Litig., 232 Fed.Appx. 161, 165-67 (3d Cir. 2007).[4]

The MDL Court, after holding a Fairness Hearing, concluded that the Class Notice Package, transmitted by first class mail to each of the 6 million individuals who had purchased the relevant policies and annuities, as well as the Publication Notice, provided "the best notice practicable" under the circumstances.

---

[4] To support his argument that the evidence of proof of notice submitted by defendant is "woefully inadequate," plaintiff cites various New Jersey state cases.  (Pl. Opp'n Br. at 6-8.) The cases, however, do not discuss class action lawsuits or appropriate notice under Rule 23, and thus are inapplicable here. See Valley Nat'l Bancorporation v. Am. Motorists Ins. Co., 719 A.2d 1028, 1031 (N.J. App. Div. 1998); Needham v. N.J. Ins. Underwriting Assoc., 553 A.2d 821, 827-28 (N.J. App. Div. 1989); Borgia v. Bd. of Review, 91 A.2d 441, 442-44 (N.J. Super. Ct. 1952).  Moreover, plaintiff's argument that he "is, and at all relevant times has been, a practicing attorney in New Jersey, and as such would not have ignored or overlooked any materials concerning a class action" is not persuasive.  (See Pl. Opp'n Br. at 5.)

<u>In re Metro. Life Ins. Co. Sales Practices Litig.</u>, 1999 U.S. Dist. LEXIS 22688, at *43-*44.[5]

Based upon these uncontested facts, the Court finds that plaintiff was a class member to the MDL Litigation.  <u>See</u> <u>In re Metro. Life Ins. Co. Sales Practices Litig.</u>, No. 96-179, MDL 1091, dkt. entry no. 1069 (finding policy holders who instituted state court action due to cancellation of their policies to be class members of the MDL Litigation based on similar facts). Thus, to the extent that plaintiff's claims are covered by the Release, plaintiff's claims are now barred.

**B.    Plaintiff's Claims are Barred by the Settlement Order**

Plaintiff contends, even if found to have been a class member, defendant cannot use the Settlement Order as an "unbridled license to treat its policy holders in any way it sees fit, and cannot be held liable for its actions, no matter how egregious." (Pl. Opp'n Br. at 10.)  Plaintiff asserts that his claims are not barred by the MDL Litigation Release because (1) the breach of contract cause of action did not arise until nearly eight years after the resolution of the MDL litigation, and (2) the Class Notice Package stated that settlement would not change a class member's "contractual rights" or "right to assert any claim that

_____

[5]   Contrary to plaintiff's apparent assertions, defendant at no point appears to argue that the Publication Notice of the Fairness Hearing alone provided plaintiff with sufficient notice of the MDL Litigation.  (<u>See</u> Pl. Opp'n Br. at 9; dkt. entry no. 32, Def. Reply Br. at 8.)

independently arises from acts, facts or circumstances arising after the end of the Class Period." (Id. at 10-11; see Friedlander Aff., Ex. B, Notice at 31; see also id. at 19 ("The settlement of this lawsuit does not change any of your contractual rights under the express terms of your existing Policy.  You will still be able to make a claim for any benefits that may be payable under the express terms of your Policy or Annuity.").)

Plaintiff's complaint, however, appears to concern allegations of misrepresentation in conjunction with the sale and performance of MetLife Policy No. 840 286 099 UL.  Specifically, plaintiff alleges he has "paid all the premiums on said policy for over twenty-three years" and otherwise compiled with all Policy requirements, but was "informed . . . that [the Policy] would be cancelled."  (Compl. at 2.)  Plaintiff contends the premature cancellation was not "an action which was authorized anywhere in the policy document," and was wrongfully done even though defendant "retained the right to increase the premium," but "for twenty-three years made no premium adjustment whatsoever."  (Pl. Opp'n Br. at 14-15.)

Plaintiff's arguments, however, fail to account for the language of the Release barring the future litigation of claims that (1) "have been, could have been, may be or could be alleged or asserted now or in the future," and (2) are "on the basis of, connected with, arising out of, or related to, in whole or in

18

part, the Policies." <u>In re Metro. Life Ins. Co. Sales Practices Litig.</u>, 1999 U.S. Dist. LEXIS 22688, at *103-*106 (emphasis added).

Given the broad and sweeping language of the Release, there is no indication that, if future issues arose concerning, <u>inter alia</u>, the servicing or administration of the Policy, misrepresentation of the terms of the Policy, or the adequacy of the premiums, the parties intended to permit members of the class to do anything more than pursue remedies under the settlement agreement. <u>See</u> <u>Andrews v. Metro. Life Ins. Co.</u>, 411 F.Supp.2d 571, 578-79 (W.D. Pa. 2006) (stating "[t]he [MDL Litigation] Release explicitly applies to every manner of claim related to the Class Policies" and "the Release may apply to claims which were not specifically raised in the [MDL Litigation]"); <u>cf.</u> <u>Berardinelli v. Gen. Am. Life Ins. Co.</u>, 357 F.3d 800, 805 (8th Cir. 2004) ("There is no impropriety in including in a settlement a description of claims that is somewhat broader than those that have been specifically pleaded.").

Moreover, the "independently arises" language in the Release, cited by plaintiff, applies only to claims flowing from "acts, facts or circumstances arising after the end of the Class Period." <u>See</u> <u>In re Metro. Life Ins. Co. Sales Practices Litig.</u>, 1999 U.S. Dist. LEXIS 22688, at *103-*06. Several of the "acts, factors or circumstances" arose within the Class Period, such as the asserted sale, marketing, and classification of the Policy,

19

as did, presumably, several of the yearly decisions by MetLife to
set the actual costs associated with the policies.  Plaintiff's
claims thus do not qualify for this exception.  See Andrews, 411
F.Supp.2d at 578 ("The same conclusion must apply to any [MDL
Litigation] class claim made with respect to persons whose
policies were issue[d] prior to December 31, 1997.").

     Plaintiff's argument that his claims are not barred because
the Class Notice Package specifically provided that a policy
holder's "contractual rights" are not altered by the settlement
is similarly unavailing.  The Class Notice Package states "the
settlement of this lawsuit does not change any of your
contractual rights under the express terms of your existing
Policy" and that class members "will still be able to make a
claim for any benefits that may be payable under the express
terms" of the policies.  (See Friedlander Aff., Ex. B, Notice at
19.)  It further provides that the Release does not alter "a
Class Member's contractual rights . . . to make a claim for
contractual benefits that will become payable in the future
pursuant to the express written terms of the Policy."  (Id. at
31.)  Nothing in these provisions exempts the claims currently
brought by plaintiff.

     Because plaintiff failed to opt out of the MDL Litigation
class, he cannot now litigate claims regarding the terms of the
Policy.  See In re Metro. Life Ins. Co. Sales Practices Litig.,

20

No. 96-179, MDL 1091 (W.D. Pa. 1999), dkt. entry no. 1069 (enjoining state court action, under similar circumstances, because the MDL Litigation Settlement Order was "broad enough to encompass claims asserted . . . which are clearly 'based upon,' 'connected with,' 'arising out of,' and/or 'relate to' the Policies"); <u>see also</u> <u>In re Prudential Ins. Co. of Am. Sales Practices Litig.</u>, No. 95-4704, 2005 U.S. Dist. LEXIS 27787, at *4-*6 (D.N.J. Nov. 15, 2005).[6]  The Court thus will thus grant defendant's cross motion for summary judgment.  In light of the disposition of the cross motion, the Court will deny plaintiff's motion, in effect, to strike.

### CONCLUSION

The Court, for the reasons stated <u>supra</u>, will (1) deny plaintiff's motion, and (2) grant defendant's cross motion.  The Court will issue an appropriate Order and Judgment.


   s/ Mary L. Cooper   
**MARY L. COOPER**
United States District Judge

Dated:    April 20, 2009

---

[6]  Plaintiff's arguments regarding the actual language of the Policy, including, <u>inter</u> <u>alia</u>, that the Policy (1) is a "master work of obfuscation" that "no reasonable person could possibly understand the nature and extent of," (2) is silent as to the right to cancellation, and (3) gives defendant "a license to be arbitrary and capricious," are barred by the MDL Litigation settlement. (<u>See</u> Pl. Opp'n Br. at 12-17.)  Plaintiff may not "re-litigate" such issues at this time.